UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAMES M. DYESS                          CIVIL ACTION

VERSUS                                  NO: 05-392

LOUISIANA STATE UNIVERSITY              SECTION: "R"(4)
BOARD OF SUPERVISORS, ET AL.

<u>**ORDER AND REASONS**</u>

Before the Court are two motions to dismiss plaintiff's 42
U.S.C. § 1983 claims for failure to state a claim under Federal
Rule of Civil Procedure 12(b)(6), one from the Schafer defendants
and one from the Louisiana State University Board of Supervisors
and Associate Dean Howard Randall.  Defendants also move to
dismiss plaintiffs' state law claims for failure to state a
claim.  For the following reasons, the Court GRANTS defendants'
motions.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff James Dyess is a doctor who attended Louisiana
State University School of Medicine.  On February 14, 2004, T.

Gregory Schafer, of the law firm Schafer & Schafer, acting as
defense counsel in a case in Louisiana state court entitled
*Lancaster v. Nangle*, No. 2003-13288 CDC, issued a subpoena for
plaintiff's educational records from LSU School of Medicine.
According to plaintiff, Schafer did not forward a copy of the
subpoena to plaintiff or his counsel and did not obtain
plaintiff's consent for the release of the records.  (Pl.'s
Compl. at ¶ 16-17).  Responding to the subpoena, LSU produced
plaintiff's medical school admissions application, Junior and
Senior clinical evaluations, dean's letter for residency
application and his medical school transcript, also without
notifying plaintiff or requesting plaintiff's consent.  (*Id*. at
¶ 19-21).  Plaintiff alleges that Associate Dean Howard Randall
"is responsible for safeguarding of [plaintiff's] personal
educational records."  (*Id*. at ¶ 10).  Plaintiff alleges that
Timothy Schafer, also of the law firm Schafer & Schafer, then
"unlawfully used" plaintiff's educational records during a
trial.[1]  (Pl.'s Compl. at ¶ 18).

_____

[1] The Schafer defendants have attached to their motion to
dismiss the two subpoenas plaintiff references in his complaint
as well as a transcript of the trial proceedings in which Timothy
Schafer used plaintiff's educational records.  (Def.'s Mot. to
Dismiss, Exs. A, B, C).  Defendants argue that the transcript
demonstrates that Schafer's use of the educational records, which
plaintiff alleges was unlawful, was in fact a routine,
appropriate and reasonable use of the records to impeach

On February 14, 2005, and by amended complaint filed March 17, 2005, plaintiff sued defendants in this Court under 42 U.S.C. § 1983, alleging that all defendants violated his constitutional rights to be free from unlawful seizure of his property and to due process of law and that LSU School of Medicine violated the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, because it has a policy of unlawfully disclosing personal education records without proper authority.  Plaintiff also alleges state law claims for negligence, invasion of privacy, abuse of process, slander and libel.  Plaintiff seeks compensatory damages, punitive damages, attorney's fees and costs, interest from the date of judicial demand, a declaration that defendants have violated the Constitution and an order enjoining them from committing any of the unlawful acts he complains about.

The Schafer defendants now move to dismiss plaintiff's § 1983 claims against them for failure to state a claim upon which relief can be granted under Rule 12(b)(6) because they are

---

plaintiff regarding his qualifications as an expert witness after plaintiff testified that he did "great" in medical school. Plaintiff has moved to strike the transcript and the two subpoenas from the record, arguing that it is not appropriate for the Court to consider such material on a motion to dismiss. Because the Court dismisses plaintiff's claims on other grounds, which do not require the Court to evaluate defendants' use of the records, the Court need not reach this issue.

not state actors who can be sued under § 1983.  LSU Board of Supervisors moves to dismiss plaintiff's claims under § 1983 because it asserts that it is entitled to Eleventh Amendment immunity from suit.  Dean Howard Randall moves to dismiss plaintiff's § 1983 claims against him in his official capacity on Eleventh Amendment grounds and in his individual capacity on qualified immunity grounds.  All defendants also move to dismiss plaintiffs' state law claims for failure to state a claim.

## II.  LEGAL STANDARD

In a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff.  *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *American Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir. 1991).  The Court must resolve doubts as to the sufficiency of the claim in plaintiff's favor.  *Vulcan Materials Company v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001).  Dismissal is warranted if it appears certain that the plaintiff cannot prove any set of facts in support of her claim that would entitle her to relief.  *Id.*; *Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir. 1995) (quoting *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994)).

4

III. DISCUSSION

A.   The Schafer Defendants' Motion to Dismiss

The Schafer defendants move to dismiss plaintiff's § 1983 claims against them because they are not individuals acting under color of state law and therefore cannot be liable to plaintiff under § 1983.  Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights;" rather it merely provides "a method of vindicating federal rights conferred elsewhere."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  When a plaintiff alleges a violation under § 1983 against private actors like the Schafer defendants, the conduct challenged as the basis of the constitutional deprivation must constitute state action under color of law.  *Morris v. Dillard Dep't Sotres, Inc.*, 277 F.3d 743, 747 (5th Cir. 2001).  For a private defendant's conduct to be considered state action, the defendant "must be a person who may fairly be said to be a state actor," which may be because the defendant "has acted together with or has obtained significant

5

aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982).  Private individuals generally are not considered state actors, and "a private party's mere invocation of state legal procedures" does not constitute "'joint participation' or 'conspiracy' with state officials satisfying the § 1983 requirement of action under color of law." *Id.* at 939 n.21, 941.

The Schafer defendants argue that, even taking plaintiff's allegations as true, plaintiff has failed to allege that they may fairly be said to be state actors, and therefore they cannot be liable under § 1983.  Plaintiff does allege that "[a]t all times relevant hereto and in all their actions described herein, all defendants were acting under the color of law." (Pl.'s Compl. at ¶ 11).  To determine whether the Schafer defendants may fairly be said to be state actors, however, the Court must look to plaintiff's factual allegations.  The only allegation that potentially implicates the state action requirement is plaintiff's assertion that T. Gregory Schafer issued a subpoena for plaintiff's educational records.  Plaintiff relies on this allegation to argue that he has properly alleged that Schafer is a state actor acting under color of law. (Pl.'s Opp. to Def.'s Mot. to Dismiss at 3).

Taking all of plaintiff's factual allegations as true, the Court finds that plaintiff has failed to allege facts from which it could fairly be said that the Schafer defendants are state actors for the purposes of § 1983.  Although the Fifth Circuit has not addressed whether an attorney who issues a subpoena may fairly be said to be a state actor, it has held that "private attorneys . . . are not official state actors, and generally are not subject to suit under section 1983." *Mills v. Criminal Dist. Court #3*, 837 F.2d 677, 679 (5th Cir. 1988).  Other circuits have consistently held that an attorney cannot fairly be said to have become a state actor merely because he issues a subpoena. *Hahn v. Star Bank*, 190 F.3d 708, 717 (6th Cir. 1999) ("[W]e now put this circuit on record as holding that a private attorney issuing a subpoena does not become a state actor for the purposes of § 1983."); *Angelico v. Lehigh Valley Hosp.*, 184 F.3d 268, 277-78 (3d Cir. 1999) ("We hold, therefore, that an attorney does not become a state actor simply by employing the state's subpoena laws."); *Barnard v. Young*, 720 F.2d 1188, 1189 (10th Cir. 1983) ("Plaintiff's allegation that the attorney acted under color of state law when he employed the device of a subpoena duces tecum does not rise to the level of acting together with or obtaining significant aid from state officials.  Nor is the conduct otherwise chargeable to the state.").  This Court concurs with

7

these decisions and holds that a private attorney's issuance of a subpoena does not make the attorney a state actor for purposes of § 1983.

Plaintiff relies on *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1267 (3d Cir. 1994). In *Jordan*, attorneys entered a judgment by confession and then executed on the judgment. *Id*. at 1264-67. The Third Circuit held that, like the issuance of a subpoena, the entry of a judgment does not involve the force of law "to an extent sufficient to hold that private persons become state actors." *Id*. at 1266. To execute the judgment, however, the attorneys in *Jordan* caused the sheriff to serve a writ garnishing plaintiff's checking account. *Id*. at 1267. The court held that this use of challenged state procedures with the help of the coercive power of state officials constituted state action for purposes of an action under § 1983. *Id*. Thus, courts recognize that actually using state officials to coerce compliance with a subpoena may convert a private attorney into a state actor for purposes of § 1983. *See, e.g.*, *Angelico*, 184 F.3d at 278. Plaintiff does not allege, however, that the Schafer defendants took any such actions to use or involve the coercive power of the state to enforce compliance with the subpoena in this case. Rather, plaintiff argues that because LSU School of Medicine is a state institution and

8

responded to the subpoena, the Schafer defendants may fairly be said to be state actors.  The Court is unpersuaded.  The holding in *Jordan* that execution of a judgment involved state action explicitly rested on the attorney's use of the *coercive* power of the state to enforce a state procedure.  The Schafer defendants did not enlist the coercive power of the State to force LSU to respond to the subpoena, nor did they invoke the aid of the State to seize any property.  The absence of this use of coercive state power distinguishes this case from *Jordan* and places it squarely under the line of cases that hold that a private attorney does not become a state actor simply by issuing a subpoena under state law.

Further, plaintiff has not alleged that the Schafer defendants and LSU "acted together" to commit the alleged violations.  *See Lugar*, 455 U.S. at 937; *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004).  To state a claim against a private defendant for participating in joint activity with the state or its agents, a plaintiff must allege facts that suggest 1) an agreement between the private and public defendants to commit an illegal act, and 2) an actual deprivation of constitutional rights.  *See Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).  Plaintiff has not alleged that the Schafer defendants and the LSU Board of Supervisors reached any agreement

to commit an illegal act or facts from which such collusion could be inferred.  At oral argument, plaintiff relied on the Fifth Circuit's recent decision in *Ballard v. Wall*, 413 F.3d 510 (2005).  That case does not advance plaintiff's argument.  In *Ballard*, the Fifth Circuit concluded that the plaintiff sufficiently alleged facts that demonstrated that two attorneys conspired with a state court judge to violate plaintiff's due process rights by placing plaintiff in prison until he paid a debt he owed to the attorneys' client.  *Id*. at 519.  The court determined that plaintiff's allegations, if taken as true, "sufficiently demonstrate that Judge Lambert and the attorneys conspired together to collect the money Ballard owed, or at a minimum, that Judge Lambert provided 'significant aid' to the attorneys in their effort to collect the money Ballard owed to their client."  *Id*. In this case, plaintiff has entirely failed to allege any facts that would indicate that the Schafer defendants conspired with LSU or that they invoked any coercive power of the state to assist them in accomplishing their aims. Because plaintiff has not alleged facts that, if true, would demonstrate that the Schafer defendants' conduct is fairly attributable to the state, plaintiff has failed to state a claim against the Schafer defendants under § 1983, and the Court dismisses those claims.

10

**B.   LSU and Associate Dean Randall's Motion to Dismiss**

    **1.   LSU Board of Supervisors**

The LSU Board of Supervisors argues that it is protected from suit under § 1983 by the Eleventh Amendment's doctrine of sovereign immunity.  Sovereign immunity under the Eleventh Amendment bars a state's citizens from suing the state or its agencies in federal courts.  *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 280 (5th Cir. 2002).  When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief, unless the state has waived its immunity.  *Id*.  By statute, Louisiana has refused to waive its Eleventh Amendment sovereign immunity against suits in federal courts.  *See id*. at 281; LA. REV. STAT. ANN. § 13:5106(A).  Courts consider the LSU Board of Supervisors to be an arm of the state for purposes of Eleventh Amendment immunity. *See Menard v. Bd. of Trustees of Loyola Univ. of New Orleans*, No. Civ.A. 03-2199, 2004 WL 856641, at *5 (E.D. La. April 19, 2004); *Johnson v. State of La.*, No. Civ.A. 01-2002, 2002 WL 1398659, at *2 (E.D. La. June 26, 2002); *Otis v. LSU Med. Ctr.*, No. CIV. A. 99-3795, 2001 WL 290166, at *4 (E.D. La. Mar. 22, 2001); *Adamo v. Bd. of Supervisors of Louisiana State Univ.*, Civ. A. No. 93-4297, 1994 WL 202368, at *4 (E.D. La. May 16, 1994).  Accordingly, the LSU Board of Supervisors is immune from liability for plaintiff's

§ 1983 claims, and the Court therefore dismisses all of those claims for lack of jurisdiction.

### 2.   Associate Dean Howard Randall

Plaintiff sues Howard Randall, the Associate Dean of Student Affairs and Records for the LSU School of Medicine, in both his individual and official capacities.  Randall moves to dismiss plaintiff's § 1983 claims against him in his official capacity on the ground that he is not a "person" within the meaning of § 1983 and therefore is immune from suit in his official capacity.  He moves to dismiss plaintiff's § 1983 claims against him in his individual capacity on the ground that he is entitled to qualified immunity from suit.

### a.   Official Capacity

The Supreme Court has held that a lawsuit against a state employee in his official capacity is equivalent to an action against the state itself.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Because plaintiff's suit against LSU, Randall's employer, is barred by the Eleventh Amendment, plaintiff's parallel suit against Randall in his official capacity as an employee of the state is similarly barred as far as any claims for damages are concerned.  *See id*.

A state official sued in his official capacity for injunctive relief, however, is a "person" under § 1983 "because

'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id*. at 71 n.10 (citing *Kentucky v. Graham*, 473 U.S. 159, 167, n.14 (1985); *Ex parte Young*, 209 U.S. 123, 159-160 (1908)).  This narrow exception to sovereign immunity permits a plaintiff to sue a state official in federal court in his official capacity for prospective injunctive relief to prevent future violations of federal law.  *Edelman v. Jordon*, 415 U.S. 651, 664 (1974).  Here, plaintiff alleges that Randall's release of his educational records violated federal law and seeks declaratory relief and an injunction to prohibit Randall from engaging in further unlawful acts.  Thus, "the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *McCarthy v. Young*, 381 F.3d 407, 417 (5th Cir. 2004) (internal quotation marks omitted).  This claim is not barred by the Eleventh Amendment.

Defendants have also argued, however, that plaintiff has not alleged facts sufficient to state a claim that the release of his educational records violates any federal law.  In response, plaintiff asserts that he has alleged facts sufficient to state a claim that the release of his records violated FERPA and his right of privacy under the Fourth and Fourteenth Amendments.  The Court rejects both of plaintiff's claims.

Plaintiff's claim for injunctive relief may not be based on

13

allegations that the disclosure of plaintiff's educational

records violated FERPA, because the Supreme Court has held that

FERPA creates no private right to enforce under § 1983.  *Gonzaga*

*v. Doe*, 536 U.S. 273, 290 n.8 (2002).  The provision of FERPA

relevant to disclosure of educational records by an educational

institution in response to a subpoena states that:

> No funds shall be made available under any applicable
> program to any educational agency or institution which has a
> policy or practice of releasing, or providing access to, any
> personally identifiable information in education records
> other than directory information, or as is permitted under
> paragraph (1) of this subsection, unless-- . . .
>> (B)  except as provided in paragraph (1)(J), such
>>       information is furnished in compliance with
>>       judicial order, or pursuant to any lawfully issued
>>       subpoena, upon condition that parents and the
>>       students are notified of all such orders or
>>       subpoenas in advance of the compliance therewith
>>       by the educational institution or agency.

20 U.S.C. § 1232g(b)(2)(B).  In *Gonzaga*, plaintiff asserted that

the release of personal educational information to unauthorized

persons without his express written consent violated FERPA.  *Id*.

at 277.  The Supreme Court held that plaintiff's action was

foreclosed because "the relevant provisions of FERPA create no

personal rights to enforce under 42 U.S.C. § 1983."  *Id*. at 276.[2]

---

[2] A state official does not lose his immunity "by violating
the clear command of a statute or regulation –– of federal or of
state law –– unless that statute or regulation provides the basis
for the cause of action sued upon."  *Davis v. Scherer*, 468 U.S.
183, 194 (1984).  Because FERPA provides no such basis, Randall
did not lose his immunity by allegedly violating FERPA's notice-

The cases plaintiff cites to support his contrary position that an action under § 1983 may be premised on a violation of FERPA all predate, and therefore were overruled by, *Gonzaga*.[3]  *See, e.g.*, *Tarka v. Cunningham*, 917 F.2d 890 (5th Cir. 1990). Plaintiff therefore has no statutory rights under FERPA that can be enforced against Randall under § 1983.

Plaintiff's allegation that the disclosure of his educational records violates his federal constitutional right to privacy also fails to state a viable claim.  Plaintiff relies on his "individual interest in avoiding disclosure of personal

before-disclosure requirement.

[3] Plaintiff is not left without a remedy for alleged violations of FERPA, however.  As the Supreme Court explained in *Gonzaga*:

> Congress expressly authorized the Secretary of Education to "deal with violations" of the Act, § 1232g(f) and required the Secretary to "establish or designate [a] review board" for investigating and adjudicating such violations, § 1232g(g).  Pursuant to these provisions, the Secretary created the Family Policy Compliance Office (FPCO) "to act as the Review Board required under the Act [and] to enforce the Act with respect to all applicable programs."  34 CFR §§ 99.60(a) and (b) (2001).  The FPCO permits students and parents who suspect a violation of the Act to file individual written complaints.  § 99.63.  If a complaint is timely and contains required information, the FPCO will initiate an investigation, §§ 99.64(a)-(b), notify the educational institution of the charge, § 99.65(a), and request a written response, § 99.65.  If a violation is found, the FPCO distributes a notice of factual findings and a "statement of the specific steps that the agency or institution must take to comply" with FERPA.  §§ 99.66(b) and (c)(1).

*Id.* at 289.

15

matters." *Whalen v. Roe*, 429 U.S. 589 (1977).  The Supreme Court has stated that there are two different kinds of privacy interests.  "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Id*.  The latter interest, also called the autonomy branch of privacy, "has been limited to intimate personal relationships or activities, and freedoms to make fundamental choices involving oneself, one's family, and one's relationships with others." *Klein Indep. Sch. Dist. v. Mattox*, 830 F.2d 576, 580 (1987).  The Fifth Circuit has held that this autonomy branch of privacy is not implicated by the release of educational records.  *Id*.  Thus, plaintiff's claim to a privacy interest in educational records may be based only on the other type of privacy interest identified by *Whalen*, "the individual interest in avoiding disclosure of personal matters."  *Whalen*, 429 U.S. at 599.

To assess whether a particular disclosure is constitutional under the disclosure branch of constitutional privacy doctrine, the Fifth Circuit applies a balancing test, weighing the privacy interest in the information against the state concerns advanced by the disclosure.  *Plante v. Gonzalez*, 575 F.2d 1119, 1134 (5th Cir. 1978).  For example, in *Klein*, a public schoolteacher objected to requests for the release of her college transcript

made under the Texas Open Records Act.  830 F.2d at 577-78.  The
Fifth Circuit recognized the disclosural privacy doctrine
announced in *Whalen v. Roe* and stated that "[t]here is some
debate whether a student maintains a privacy interest in his
educational records."[4]  *Id*. at 580.  The court declined, however,
to engage in an inquiry into whether the plaintiff had a
recognizable privacy interest in her educational records.
Instead, the court decided that, even if she did have such an
interest, it was significantly outweighed by the public's
interest in evaluating the competence of its schoolteachers.  *Id*.
at 580-81.  Applying the same test in this case requires the
Court to weigh plaintiff's interest in avoiding the disclosure of
his educational records with Randall's interest, in his official
capacity as a representative of LSU, in complying with a validly
issued subpoena.  In *Cinel v. Connick*, the Fifth Circuit

---

[4] To support this proposition, the Fifth Circuit cited a
district court case, *Smith v. Dusquesne University*, in which the
court was faced, pre-*Gonzaga*, with the question of whether a
private right of action existed under FERPA.  612 F. Supp. 72, 80
(W.D. Pa. 1985).  The *Smith* court did not explicitly analyze
whether a federal constitutional right to privacy in educational
records exists, but it determined that the purpose of FERPA was
"to deter schools from indiscriminately releasing student
records" and to place "a heavy burden on a party seeking access
to student records to demonstrate a genuine need which outweighs
the student's privacy interest."  *Id*. (citing 120 Cong. Rec.
S39858 (daily ed. Dec. 13, 1974) (joint remarks of Sen. Buckley
and Sen. Pell)).

explicitly recognized the weight accorded to a government
official's interest in complying with a subpoena.  15 F.3d at
1342.  In that case, plaintiff sued officials in the district
attorney's office for producing materials in which plaintiff
claimed a privacy interest in response to a subpoena duces tecum
issued by a litigant in a previous civil suit.  *Id*.  Plaintiff
asserted that the government officials violated his
constitutional right to privacy when they produced the materials
in response to the subpoena.  *Id*.  The Fifth Circuit assumed that
plaintiff had a privacy interest in the materials requested by
the subpoena but nevertheless rejected plaintiff's claim, holding
that "the government officials had a legitimate interest in
complying with a validly issued subpoena."  *Id*. at 1343.

Here, LSU similarly produced the materials at issue in
response to a subpoena that plaintiff does not allege was
invalid.  The Court concludes that LSU's interest in complying
with the valid subpoena outweighs any constitutionally recognized
privacy interest plaintiff has in avoiding disclosure of his
educational records.  Further, even if plaintiff had alleged some
kind of reputational injury in his complaint, the Fifth Circuit
has also held that a plaintiff does not have a constitutional
claim for any damage to his reputation as a result of the
production of materials in response to a subpoena, because an

18

interest in reputation alone does not implicate a "liberty" or "property" interest sufficient to invoke due process protection. *Id*. (citing *Paul v. Davis*, 424 U.S. 693, 712 (1976)); *Thomas v. Kippermann*, 846 F.2d 1009, 1010 (5th Cir. 1988).  For these reasons, the Court concludes that plaintiff failed to allege facts sufficient to state a claim for injunctive relief against Randall in his official capacity and also dismisses that claim.

### b.   Individual Capacity

Plaintiff also sues Randall in his individual capacity. Randall asserts that he is entitled to qualified immunity from suit.  Qualified immunity protects government officials who perform discretionary functions from civil liability unless their conduct violates a clearly established federal statutory or constitutional right of which a reasonable person would have known.  *Felton v. Polles*, 315 F.3d 470, 477 (5th Cir. 2002).  To determine whether defendants are entitled to qualified immunity, the Court undertakes a two-part inquiry.  The first question is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the conduct at issue violated a federal statutory or constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The Court has already determined that plaintiff has no statutory rights under FERPA that can be enforced against Randall.  The Court has also already determined

that any constitutional right to privacy plaintiff might have in his educational records is outweighed by Randall's legitimate interest in complying with a valid subpoena.  Accordingly, the facts alleged do not show that the conduct at issue violated a federal statutory or constitutional right.

Further, even if the Court were incorrect in concluding that no constitutional violation occurred, Randall would still be entitled to qualified immunity.  This follows because the decision as to whether a particular interest is constitutionally protected requires the application of a balancing test. Generally, "when the law requires a balancing of competing interests, it may be unfair to charge an official with knowledge of the law in the absence of a previously decided case with clearly analogous facts." *Borucki v. Ryan*, 827 F.2d 836, 848 (1st Cir. 1987).  This principle is even more applicable when, as here, earlier case law found that other interests prevailed over privacy interests.  *Id.; see Klein*, 830 F.2d at 580.  Thus, it cannot be said that any constitutional right to privacy that plaintiff may have in his education records was "clearly established," and Randall is entitled to qualified immunity from suit on plaintiff's § 1983 claims.

### C.    State Law Claims

20

Plaintiff also asserts various state law causes of action, which all defendants move to dismiss for failure to state a claim.  A federal court may decline to exercise supplemental jurisdiction when it has dismissed the claims on which its original jurisdiction was based.  28 U.S.C. § 1367(c)(3).  The general rule is that district courts should decline jurisdiction over state law claims when all federal claims are dismissed, *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002), and the Court has wide discretion to do so.  *See Guzzino v. Felterman*, 191 F.3d 588, 594-95 (5th Cir. 1999).  Here, the Court has dismissed all of plaintiff's federal claims against all of the defendants.  No independent basis exists for jurisdiction on the state law claims against those defendants.[5]  This case has been pending less than six months and has not progressed past the stage of motions to dismiss.  The state law claims involve unsettled issues of state law that comity principles indicate state courts should decide in the first instance.  The Court therefore finds that the rule counseling against the exercise of

---

[5] Plaintiff apparently invokes the Court's jurisdiction over federal questions under 28 U.S.C. § 1331, and does not assert an independent basis for original jurisdiction over the state law claims.  Moreover, plaintiff does not allege facts that would provide an independent basis of original federal jurisdiction, such as diversity.  All parties are Louisiana residents.  (Pl.'s Compl. at ¶¶ 5-10).

supplemental jurisdiction over state law claims when federal claims have been dismissed applies in this situation, and the Court dismisses plaintiffs' state law claims without prejudice.

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS defendants' motions to dismiss plaintiff's federal claims against defendants. Plaintiffs' state law claims are dismissed without prejudice.


New Orleans, Louisiana, this __19th__ day of August, 2005.


_____
                SARAH S. VANCE
         UNITED STATES DISTRICT JUDGE